## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MEGAN EILEEN DUNIGAN,**

      **Plaintiff,**

**v.**
                                                    **Civil Action No. 2:17cv40**
                                                    **(Judge Bailey)**

**LT. BRIAN PURKEY; JEFF GIVENS,
Chief United States Probation Officer;
USPO VINNIE ZUMMO, United States
Probation Officer; TERRY MOORE,
Deputy United States Marshal; DEREK
PATRICK, Deputy United States Marshal;
FRED FREDERICK, Deputy United States
Marshal; ROBERT L. ROOT, Task Force
Agent (former); MARK ROGERS, Task
Force Agent; L.W. SYLVESTER, Task
Force Agent; MICHAEL FAZZINI, Task
Force Agent; PFC DON QUINN, PFC/Dog
Handler; MATT WILFONG, Detective;
and SHAWN ANGUS MORGAN, Assistant
U.S. Attorney (former),**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Factual History[1]

On May 27, 2011, in <u>United States v. Dunigan</u>, Crim. Action No. 1:10cr95 in this Court,

Plaintiff was convicted of unlawfully, knowingly, and intentionally distributing LSD within 1000

feet of a protected location. She was sentenced to twenty-four (24) months imprisonment, to be

followed by seventy-two (72) months of supervised release. At the time of the search that forms

---

[1] The facts in this section are taken either from published court decisions or court records. Courts in the Fourth Circuit regularly take judicial notice of facts from court documents. <u>Colonial Penn  Ins. Co. v. Coil</u>, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'"); <u>see also</u> <u>Philips v. Pitt Cnty. Mem Hosp.</u>, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record").

the basis for Plaintiff's instant Complaint, Plaintiff was still serving that term of supervised release.

As of February 8, 2013, in United States v. Hill, Crim. Action No. 1:13cr18, the United States Probation Office had obtained an arrest warrant for Plaintiff's boyfriend, Eric Barker, based upon his supervised release violations. United States v. Hill, 776 F.3d 243, 245 (4th Cir. 2015). On that same day, Deputy U.S. Marshal Terry Moore assembled a ten-member team to execute the warrant, including deputy marshals, local drug task force officers, and probation officers. Id. The team arrived at Barker's residence, knocked on the door, and announced their identity and purpose. Id. The landlady answered, advising that "Eric lives upstairs." Id. The team, with the exception of the probation officers, went up the stairs. Id.

Deputy U.S. Marshal Moore found Barker inside of a bathroom; he was ordered to lie down, and he was handcuffed and arrested. Id. at 245 - 46. Team members then fanned out to conduct a protective sweep. Id. at 246. A deputy marshal forced open a locked bedroom door to find Plaintiff hiding behind a bed; another individual, Robert Hill, was found in different bedroom. Id. Both were handcuffed, and Probation Officer ("PO") Zummo identified both as also being on supervised release. Id. PO Zummo then called Magistrate Judge John Kaull to tell him that the officers had found two additional individuals in violation of their supervised release conditions, Plaintiff and Hill were then arrested. Id. During the protective sweep, the officers observed needles, a homemade tourniquet, pills, packaging for synthetic marijuana, and other drug paraphernalia in plain view. Id.

After Plaintiff, Barker, and Hill were arrested and the protective sweep had ended, PO Zummo and other arrest team members conducted a walk-through of the apartment looking for evidence of other supervised release violations. Id. They found scales, wax paper, and black

electrical tape. Id. PO Zummo seized cell phones and an intravenous drug use kit containing needles, cotton balls, and spoons. Id.

After the walk-through, PO Zummo requested that a trained drug-detection dog be brought to the apartment.  Id.  Approximately 15 - 20 minutes later, the dog and his handler arrived. Id.  The dog alerted positively in multiple places, including a "high" alert, above the officers' heads, drawing their attention to an out-of-place ceiling tile where a plastic bag was visible, tucked up inside the dropped ceiling.  Id. The officers stopped the search and secured the apartment. Id.  Robert Root applied for and obtained a warrant to search the apartment. Id. Root's accompanying affidavit detailed his law enforcement experience; the circumstances of the arrest warrant execution, protective sweep, and walk-through; the contraband and paraphernalia discovered during those activities; and the drug dog alerts. Id.  The officers' subsequent search, pursuant to the warrant, found packaged and unpackaged heroin, prescription pills, suspected LSD, synthetic marijuana, and more drug use paraphernalia. Id.

On March 5, 2013, in United States v. Barker, Crim. Action No. 1:13cr18, a federal grand jury indicted Plaintiff for (1) conspiracy to Possess with Intent to Distribute Heroin; (2) Possession with Intent to Distribute Heroin – Aiding and Abetting; and (3) Maintaining Drug-Involved Premises – Aiding and Abetting. See United States v. Barker, Crim. Action No. 1:13cr18 [ECF No. 1]. On April 2, 2013, Barker filed a Motion to Suppress Evidence from the February 8, 2013 search. See id., ECF No. 14. Plaintiff joined in Barker's motion on April 5, 2013. See id., ECF No.  16. A hearing on the motion was held on April 16, 2013. See id., ECF No. 40.

The Magistrate Judge recommended denying the motions to suppress [see id., ECF No. 34]; United States District Judge Keeley adopted the recommendation [id., ECF No. 47], finding

3

that both searches met the reasonable suspicion standard;[2] that there was sufficient untainted evidence to establish probable cause to support the search warrant, even if the walk-through and dog sniff were illegal, and that the arrest warrant execution and protective sweep were lawful. See Hill, 776 F.3d at 247. Thereafter, on July 12, 2013, Plaintiff and her co-defendants entered conditional guilty pleas, preserving their right to appeal the denial of their suppression motions. Id.

On October 24, 2013, Plaintiff appealed this Court's denial of her Motion to Suppress[3] to the Fourth Circuit Court of Appeals. On January 13, 2015, the Fourth Circuit vacated the judgments and remanded the case back to the District Court to make factual findings related to the independent source doctrine's applicability. See generally Hill, 776 F.3d 243.

However, during the time the matter was on appeal, unbeknownst to the United States Attorney's Office and without its authorization, the drug evidence was destroyed. See Crim. Action No. 1:13cr18, ECF No. 157.  Accordingly, the Superseding Indictment was dismissed. Id.

## II. Procedural History

Thereafter, on March 6, 2017, the pro se Plaintiff, by then an inmate at the Tygart Valley Regional Jail,[4] in Belington, West Virginia, initiated this case by filing a court-approved form

---

[2] The Court relied on United States v. Knights, 534 U.S. 112 (2001), which upheld a reasonable warrantless search of a probationer's home when officers had reasonable suspicion and the probationer had agreed to a probation condition allowing warrantless home searches.

[3] However, Plaintiff did not appeal the Court's ruling regarding the execution of the arrest warrant and the protective sweep. See Hill, 776 F.3d at 247 n.2.

[4] By March 6, 2017, Plaintiff had already been indicted, arrested, and detained in United States v. Barker, Crim. Action No. 1:16cv31 on charges of conspiracy to distribute and possess with intent to distribute MAM2201, a controlled substance analogue; maintaining drug involved premises; distribution of the controlled substance analogue MAM2201. On July 5, 2017, Dunigan entered a plea to Count One of a superseding indictment, and on August 30, 2017, she was sentenced to a term of 36 months imprisonment and three years' supervised release.

Bivens[5] civil rights complaint against the above-named defendants, attaching documents indicating that she was also attempting to pursue Federal Tort Claim Act ("FTCA") claims as well. ECF No. 1. Along with her complaint, she filed a motion to proceed as a pauper with supporting documents. ECF Nos. 2, 3, & 4. By Order entered March 15, 207, Plaintiff was granted permission to proceed as a pauper and directed to pay an initial partial filing fee ("IPFF"). ECF No. 8. Plaintiff paid her IPFF on April 7, 2017. ECF No. 10.  By Order entered June 7, 2017, Plaintiff was notified of the potential consequences of pursuing both a FTCA action and a Bivens action.  ECF No. 13. On June 16, 2017, Plaintiff filed a Notification, indicating that she wished to pursue only the Bivens action. ECF No. 15.

On August 23, 2017, Magistrate Judge James E. Seibert conducted a preliminary review of the file; determined that summary dismissal was not appropriate at that time; and directed the Clerk to issue summonses and forward copies of the complaint to the United States Marshal Service ("USMS") for service of process upon the defendants. ECF No. 18.  Subsequently, the *pro se* law clerk assigned to this case was advised by the USMS that none of the defendants could be served at the addresses provided in the complaint. Accordingly, by Order entered August 29, 2017, the Plaintiff was directed to provide more complete information to enable the Defendants to be served. ECF No. 17. A copy of that Order was sent to the Plaintiff via certified mail, return receipt requested, at her last known address on the docket. Id. On September 6, 2017, the Order was returned as undeliverable.[6]  ECF No. 18.  On September 8, 2017, Plaintiff filed a Notice of Change of Address. ECF No. 19.  A copy of the August 29, 2017 Order was

---

[5] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[6] Plaintiff has filed multiple changes of address throughout the pendency of these proceedings; at present, she is in a halfway house in Bushnell, Florida.  The Bureau of Prisons' ("BOP") online Inmate Locator indicates that she has an expected release date of February 3, 2019.

resent to her at the new address. Id. On September 29, 2017, Plaintiff filed another Notice of Change of Address. ECF No. 20.  On October 18, 2017, the copy of the August 29, 2017 Order that was resent was returned undeliverable. ECF No. 22.  Nonetheless, on October 30, 2017, Plaintiff filed a response to the August 29, 2017 Order. ECF No. 23.

On November 1, 2017, summonses were issued for the named defendants. ECF No. 24. On December 26, 2017, Defendants Morgan, Givens, Zummo, Moore, Patrick, Frederick, Purkey, Root, and Silvester ("the federal defendants") moved for an extension of time and Consolidated Response Date. ECF No. 39.  On January 12, 2018, the federal defendants filed a Motion to Dismiss with a memorandum in support.  ECF Nos. 42, 43. On January 23, 2018, the federal defendants' motion for an extension of time and consolidated response date was denied as moot. ECF No. 44. That same day, because Dunigan was proceeding *pro se*, a Roseboro Notice issued, advising her of her right to respond to the federal defendants' dispositive motion. ECF No. 45.  On February 20, 2018, Dunigan filed a response in opposition. ECF No. 49.  On February 28, 2018, the federal defendants filed a reply. ECF No. 50.

On April 25, 2018, Defendants Fazzini and Quinn filed a Motion for Leave to File Responsive Pleading, attaching a Motion to Dismiss with attached affidavits and a supporting memorandum, and a Memorandum of Law in Support of Motion for Leave to File Responsive Pleading. ECF Nos. 53, 54. On April 30, 2018, Defendant Wilfong filed a Motion for Leave to File Responsive Pleading, attaching a Motion to Dismiss with an attached affidavit and a supporting memorandum, and a Memorandum of Law in Support of Motion for Leave to File Responsive Pleading. ECF Nos. 55, 56. On May 1, 2018, Defendant Rogers filed a Motion for Leave to File Responsive Pleading, attaching a Motion to Dismiss with an attached affidavit and a supporting memorandum, and a Memorandum of Law in Support of Motion for Leave to File

6

Responsive Pleading. ECF Nos. 57, 58.  By Order entered June 6, 2018, Defendants Fazzini, Quinn, Wilfong, and Rogers' unopposed Fed.R. Civ. P. 6(b) Motions for Leave to File Responsive Pleadings were granted. ECF No. 59. The Clerk was directed to docket Defendants Fazzini, Quinn, Wilfong, and Rogers' dispositive motions separately on the docket. Id. Second, third, and fourth Roseboro Notices were issued, advising Dunigan of her right to respond to Defendants Fazzini, Quinn, Wilfong, and Rogers' dispositive motions. ECF Nos. 63, 64, 65. On June 11, 2018, Dunigan filed a motion for an extension of time and notice of change of address. ECF No. 67.  By Order entered June 12, 2018, Dunigan's motion for an extension of time was granted in part.  ECF No. 68. On June 25, 2018, Dunigan filed a Reply to the Order granting in part her motion for an extension of time. ECF No. 71. On July 2, 2018, Dunigan filed objections to various motions filed by several of the defendants and to orders and Roseboro Notices entered by the undersigned dating back to late April, 2018. See ECF No. 72.  The objections were also docketed as a motion to recuse the undersigned. ECF No. 73. By Order entered July 5, 2018, the motion to recuse was denied. ECF No. 74.  As of the date this Report and Recommendation was entered, Dunigan did not file responses in opposition to Defendants Fazzini, Quinn, Wilfong, and Rogers' dispositive motions.[7] By Order entered July 24, 2018, Dunigan's July 2, 2018 objections were overruled.  ECF No. 80.

Accordingly, this case is before the undersigned for review, report, and recommendation pursuant to Local Rule of Prisoner Litigation Procedure ("LR PL P") 2.

### III. The Pleadings

#### A. The Complaint

In her Complaint against the above-named federal and non-federal defendants, the Plaintiff raises claims alleging Fourth Amendment violations stemming from the allegedly

---

[7] Those responses were due by July 12, 2018.

illegal February 8, 2013 search, and a challenge to her indictment arising from the same. More specifically, she alleges claims of prosecutorial and police misconduct; conspiracy; failure to supervise, train, direct subordinates; personal property loss; wrongful conviction, loss of liberty as a result of illegal imprisonment; and emotional turmoil. ECF No. 1 at 9.

She alleges that on an unspecified date,[8] at her apartment in Clarksburg, West Virginia [id. at 14], she was detained, incident to an unlawful canine search done without a warrant  or probable cause by defendants Purkey, Moore, Patrick, Fredrick, Root, Rogers, Sylvester, and Fazzini. Id. at 7. She alleges that while conducting the raid, Defendants broke doors to rooms and closets.  Id.  She contends that unspecified personal property "was either destroyed, confiscated, lost, or stolen." Id. at 13. Once she and her co-defendants were removed, Purkey, Moore, Root, Rogers, Sylvester, Fazzini, Zummo, and Givens, without a warrant and without permission, conducted a secondary search for contraband, bringing in Quinn and a canine. Id. at 8. Once contraband was located, a search warrant was obtained, allegedly in violation of her Fourth Amendment rights. Id.

Plaintiff alleges that Root, Rogers, Sylvester, Fazzini, and Morgan conspired to procure a defective search warrant, omitted material evidence from the record, and that their decision to apply for the search warrant "was in direct connection with police misconduct." Id.

Plaintiff contends that as a result of the Defendants' acts, she was wrongfully convicted and illegally imprisoned for over 760 days, until the Fourth Circuit Court of Appeals reversed the district court's judgment and remanded the case.  Id. at 8, 14, 17.

Plaintiff does not indicate whether she exhausted her administrative remedies with regard to her claims; she left blank all questions on the form complaint regarding the issue. Id. at 4 – 5.

---

[8] The Plaintiff's complaint is insufficiently pled and sorely lacking in detail.

As relief, she requests compensation for (unidentified) real and personal property damage, and damages for each day of incarceration pursuant to her violation of her terms of supervised release in Criminal Case No. 1:10cr95 and her guilty plea in Criminal Case No. No. 1:13cr18, requesting that that this court

> invoke Replevy. The damages for the real and personal property loss exceed: $500,000.00 USD, and to aver the following: damages for wrongful conviction and illegal imprisonment at $100,000.00 USD per day plus emotional turmoil, imposing liability onto Defendants. Emotional turmoil, property loss, and illegal imprisonment totaling: $500,000,000.00 (Five Hundred Million) United States Dollars.

Id. at 9.

## B. Motion to Dismiss by the Federal Defendants, Morgan, Givens, Zummo, Moore, Patrick, Frederick, Purkey, Root, and Silvester

The federal defendants argue that the complaint should be dismissed because

1) former Assistant United States Attorney ("AUSA") Shawn Angus Morgan has absolute prosecutorial immunity;

2) Plaintiff's claims against Special Deputy U.S. Marshals Robert Root and Terry Moore for their testimony provided to the court should be dismissed for absolute immunity;

3) because Plaintiff's claims arise out of a February 8, 2013 search and arrest and her March 5, 2013 indictment, they are time-barred under West Virginia's two-year statute of limitations for personal injury actions;

4) the federal defendants are entitled to qualified immunity; and

5) to the extent that Plaintiff is seeking damages based upon supervisory liability, because there is no *respondeat superior* liability in a Bivens action, the claims should be dismissed.

ECF No. 43 at 7 - 17.

## C. Plaintiff's Response in Opposition to the Federal Defendants' Motion to Dismiss

Plaintiff reiterates her versions of the facts and her arguments in support of her claims, attempting to refute the defendants' on the same. She contends that the statute of limitations on her claims began "two years from the date of the last decision" in the case, and because her

9

appeal was granted on January 13, 2015, her complaint was timely filed on December 28, 2016 [sic].[9] She argues that if she had not timely filed, then "the court would have simply rejected the filing" and notified her that it was untimely; therefore, she concludes, because it did not, her claims are timely.  ECF No. 49 at 5 - 9.

**D. The Federal Defendants' Reply to Plaintiff's Response in Opposition**

The federal defendants contend that Plaintiff's response in opposition "all but confirmed that Ms. Morgan is entitled to prosecutorial immunity.  ECF No. 50 at 1. They reiterate their argument that Special Deputy U.S. Marshals Robert Root and Terry Moore are absolutely immune from liability for their testimony in Plaintiff's case, and note that Plaintiff's response does not appear to contest the fact that witnesses are entitled to immunity.  Id. at 2 - 3. Nonetheless, they argue that Plaintiff's claims regarding the two Special Deputy USM defendants should be dismissed on statute of limitations or qualified immunity grounds. Id. They reiterate their argument regarding the untimeliness of Plaintiff's claims, noting that Plaintiff failed to contest the fact that she was aware of the alleged illegality of the February 8, 2013 search by April 5, 2013 at the latest – the date she filed her motion to suppress.  Accordingly, they conclude, Plaintiff's claims are time-barred. Id. at 7.

**E. Defendants Michael Fazzini and Don Quinn's Motion to Dismiss**

Defendants Michael Fazzini ("Fazzini") and PFC Don Quinn ("Quinn") contend that the complaint should be dismissed because:

1) Plaintiff's claims are time-barred under West Virginia's two-year statute of limitations; and

---

[9] Plaintiff is apparently referencing the earlier action she filed, raising these claims, in Dunigan v. Purkey, Case No. 3:17cv2.  The certificate of service on that complaint is dated and signed December 29, 2016 [see ECF No. 1 at 13]; the complaint was filed on January 6, 2017. That complaint was not one of this district's court-approved forms, thus, pursuant to a Notice of Deficient Pleading and Intent to Dismiss, she was advised that the matter would be dismissed within 30 days and directed to refile her complaint on the court-approved form sent with the notice. ECF No. 2. The case was dismissed pursuant to that Notice on March 20, 2017, after she filed the March 6, 2017 complaint in this case. ECF No. 11.

2) Plaintiff cannot show that the two-year statute of limitations should be tolled. ECF No. 60-1 at 3 – 5.

Both Fazzini and Quinn attached affidavits in support of their arguments to their dispositive motions. See ECF Nos. 60-2, ECF No. 60-3.

**F. Defendant Matthew Wilfong's Motion to Dismiss**

Defendant Matthew Wilfong ("Wilfong") contends that the complaint should be dismissed because:

1) Plaintiff's claims are time-barred under West Virginia's two-year statute of limitations; and

2) Plaintiff cannot show that the two-year statute of limitations should be tolled. ECF No. 61-1 at 3 – 5.

Wilfong attaches an affidavit in support of his arguments to his dispositive motion. See ECF No. 61-2.

**G. Defendant Mark Rogers' Motion to Dismiss**

Defendant Mark Rogers ("Rogers") argues that the complaint should be dismissed because:

1) Plaintiff's complaint should be dismissed as to Defendant Rogers because service of process was insufficient under Fed.R. Civ. P. 12(B)(5).

2) Plaintiff's claims are time-barred under West Virginia's two-year statute of limitations; and

3) Plaintiff cannot show that the two-year statute of limitations should be tolled. ECF No. 62-1 at 5 – 8.

Rogers attaches an affidavit in support of his argument to his dispositive motion. See ECF No. 61-2.

**IV. Standard of Review**

**A. Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 – 21 (1972) (*per curiam*); Erickson v. Pardus, 551 U.S. 89, 94 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, *supra* at 520–21. "[T]he mandated liberal construction afforded to *pro se* pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). However, "judges are [] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 – 8 (7th Cir. 1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the

speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that "because the plaintiffs [] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy. Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007).

## B. **Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt

14

as to material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." <u>Anderson</u>, *supra* at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id.</u> "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, *supra* at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u>, *supra* at 587. "Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Id.</u> *citing* <u>First Ntl. Bank of Ariz. v. Cities Service Co.</u>, 391 U.S. 253, 289 (1968). See <u>Miller v. Fed. Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the  underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole

15

could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, *supra* at 587-88; Anderson, *supra* at 248-49.

## V. Analysis

### A.  Statute of Limitations

For purposes of determining the appropriate statute of limitations, claims filed pursuant to 42 U.S.C. § 1983 are analogous to "general personal injury actions." Wilson v. Garcia, 471 U.S. 261, 279 (1985). Thus, their timeliness is determined based upon the relevant state limitations period for personal injury actions. Because Bivens is the federal equivalent to an action under § 1983, federal courts have consistently extended the state general personal injury statute of limitations to Bivens cases, as well as § 1983 claims. See, *e.g*. Chin v. Bowen, 833 F.2d 21, 23-24 (2nd Cir. 1987). In fact, the Fourth Circuit Court of Appeals has determined that West Virginia's two year personal injury statute of limitations contained at W.Va. Code § 55-2-12(b) is appropriately applied in Bivens actions.  See Reinhold v. Evers, 187 F.3d 348, 359, n. 10 (4th Cir. 1999). W.Va. Code § 55-2-12(b) provides:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) within two years next after the right to bring the same shall have accrued if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party dies, it could not have been brought at common law by or against his personal representative.

Despite borrowing the West Virginia statute of limitations, federal law determines the appropriate standard for when an action "accrues" for that statute of limitations to begin to run. That standard was reiterated by an *en banc* decision of the Fourth Circuit in Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996), holding that "[u]nder federal law a cause of

16

action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Id. (citing United States v. Kubrick, 444 U.S. 111, 122–24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)).  "It is the awareness of the facts giving rise to the course of action and not the awareness that the illegality of the action . . . that begins the running of the statute of limitations." Lewis v. Clark, 534 F.Supp. 714, 716-717 (D. Md. 1982) (citing Bireline v. Seagondollar, 567 F.2d 260 (4th Cir. 1977)); see also Fluharty v. City of Clarksburg, Case No. 1:14cv27, 2017 U.S. Dist. LEXIS 4596 * 14 (N.D. W.Va. Jan. 12, 2017)(Keeley, I.M.).

In the typical search and/or seizure, because the plaintiff is usually present during the same, he or she knows the facts and circumstances, the accrual of his or her Fourth Amendment claims happens on the same day of the search and/or seizure. Barren v. Allegheny Cnty., Pa., 607 Fed. Appx. 130, 131 (3rd Cir. 2015)(per curiam) (plaintiff "alleged that the unlawful searches and seizures occurred in 2003, and his claim accrued when those actions took place."); Gorelik v. Costin, 605 F.3d 118, 122 (1st Cir. 2010) ("a plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt."); see also Cramer v. Crutchfield, 648 F.2d 943, 945 (4th Cir. 1981) (holding that statute of limitations begins to run two years after the search itself occurred).

Here, Plaintiff attempts to argue that under West Virginia law, in a case such as this, "the statute of limitations begins two years from the date of the last decision" entered, and that because the Fourth Circuit's decision in her appeal of the denial of her motion to suppress in Case No. 1:13cr18 was not issued until January 13, 2015, and she filed suit on December 28, 2016 [sic],  her complaint was filed within "[o]ne year, eleven months, and 15 days after" the

Fourth Circuit published its decision,[10] rendering her complaint timely.   ECF No. 49 at 8. Further, she argues that because this Court accepted her complaint without summarily dismissing it as untimely, the defendants' arguments regarding her time-barred claims are meritless. Id. Plaintiff fails to provide citation to any law in support of either proposition.

Defendants all argue that Plaintiff's claims are untimely, and that even if Plaintiff were entitled to equitable tolling of the statute of limitations till the date of the Fourth Circuit's January 13, 2015 decision, the complaint was still filed well past the applicable statute of limitations.

Here, Plaintiff alleges that the events of the February 8, 2013 search, her arrest, the March 3, 2013 indictment, and her early-to mid-April 2013 motions to suppress and suppression hearing all violated her Fourth Amendment rights.   However, nowhere does she allege that the Defendants prevented her from discovering the facts and circumstances regarding the allegedly wrongful conduct, and indeed, she could hardly do so, given that she was present when the search occurred. Therefore, at least by April 5, 2013, not only was she aware of the facts, she was also aware of the alleged illegality of the conduct, in light of the fact that through counsel, she moved to suppress the evidence obtained via the allegedly illegal search.

However, despite knowing of the facts and circumstances, and despite arguing through counsel that the search was illegal, Plaintiff still waited to file her complaint until March 6, 2017, four years and twenty-six days after the search occurred. Under Fourth Circuit law, calculated from the date of the allegedly illegal search, this was two years and twenty-six days after the statute of limitations expired.   As noted *supra*, under federal law, it is *not* the date of the last filing in a case that triggers the beginning of the running of the statute of limitations; rather, "a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him

---

[10] United States v. Hill, No. 13-4806, 776 F.3d 243 (4th Cir. 2015).

that reasonable inquiry will reveal his cause of action." <u>Nasim</u>,  64 F.3d at 955. Even assuming Plaintiff did not fully realize the alleged illegality of the search until the date the April 5, 2013, motion to suppress was filed, Plaintiff's complaint remains untimely filed.

Even if the Court were to afford the *pro se* Plaintiff extra leniency by construing the date she handed off her *first* complaint regarding these claims to prison officials for mailing, under the prison mailbox rule,[11] assuming that the date she did so was the December 29, 2016 date on the certificate of service of that complaint (<u>Dunigan v. Purkey</u>, Case No. 3:17cv2, ECF No. 1 at 13), this equitable tolling would still not save Plaintiff's pleadings. Plaintiff does not contest the fact that she was aware of the alleged illegality of the February 8, 2013 search by April 5, 2013, at the latest – the date she filed her motion to suppress in the underlying criminal case. <u>See</u> ECF No. 49 at 3.  Therefore, assuming that her cause of action actually did not accrue until April 5, 2013, her claims were already time-barred by April 5, 2015, two years after the date she filed her motion to suppress. Given that she did not hand her *first* complaint over these claims to prison authorities until December 29, 2016, that was still three years, 8 months, and 24 days after April 5, 2015.

Finally, as for Plaintiff's contention that if her claims had no merit, the Court would never have ordered the Defendants to file an answer, this argument, too, is without merit.  In its Orders to Answer, the Court merely determined summary dismissal was not appropriate at that time and directed the Defendants to file responses to the complaint.  Such an Order makes no findings as to whether or not the underlying claims actually have merit.  A merits determination can only be made after proper response and reply.

---

[11] <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266 (1988) (holding that a prisoner's mailings are deemed filed when they are delivered to prison authorities for mailing).

Accordingly, the undersigned finds that Plaintiff's complaint is barred by the applicable statute of limitations and should be dismissed.

## VI. Recommendation

For the forgoing reasons, the undersigned recommends that Defendants Morgan, Givens, Zummo, Moore, Patrick, Frederick, Purkey, Root, and Silvester's Motion to Dismiss [ECF No. 42] be **GRANTED**; Defendants Fazzini and Quinn's Motion to Dismiss, construed herein as a Motion for Summary Judgment [ECF No. 60] be **GRANTED**; Defendant Wilfong's Motion to Dismiss, construed herein as a Motion for Summary Judgment [ECF No. 61] be **GRANTED**; Defendant Rogers' Motion to Dismiss, construed herein as a Motion for Summary Judgment [ECF No. 62] be **GRANTED**; and that Plaintiff's Complaint [ECF No. 1] be **DISMISSED with prejudice for failure to state a claim upon which relief can be granted** under 28 U.S.C. § 1915(e)(2)(B)(ii).

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to transmit a copy electronically to all counsel of record.

This Report and Recommendation completes the referral from the district court. The Clerk is **DIRECTED** to terminate the Magistrate Judge's association with this case.

DATED:  July 25, 2018

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE